60 So.2d 892

**SOUTHERN BIOLOGICAL SUPPLY CO., Inc. v. MORRISON.**

No. 40406.

July 3, 1952.

Rehearing Denied Oct. 7, 1952.

Harry Pelias, New Orleans, for plaintiff-appellee.

Edward Rightor, W. H. Sellers, New Orleans, for defendant-appellant.

HAMITER, Justice.

In February, 1939, plaintiff and defendant entered into a written agreement which provided for the latter's selling in a concession booth at the New York World's Fair, opening May 1st of that year, of live baby turtles, lizards and certain accessories to be supplied by the former. The contemplated sales did not materialize, however, and all operations ceased after a period of about two months.

Alleging that defendant breached the agreement that constituted on his part an actual order for and completed purchase of 50,000 turtles at 12¢ each, plaintiff instituted this suit on April 23, 1942 to recover damages in the sum of $6,000. Of this amount $5,136.21 is claimed as expenses incurred in acquiring and handling the turtles and the balance of $863.79 as a reasonable profit under the contract or order.

Trial of the case took place April 6, 1949, and on August 1, 1949, the district court rendered a judgment in plaintiff's favor for $395.55. From the judgment defendant appealed to the Court of Appeal, Orleans Circuit. Plaintiff answered requesting that the award be increased to $5,245.86. The appeal was transferred to this court inasmuch as the amount in dispute exceeded $2,000.

The written agreement forming the basis of the suit reads as follows:

"1939
"Feb. 28

"G. D. Morrison, 1326 Canal Bank Bldg., grants to the Southern Biological Supply Co., Inc., 517 Decatur St., the exclusive privilege of supplying him with live baby turtles and other reptiles and amphibians and all accessories used in connection therewith to be sold in the Children's World Pet Shop, subject to the approval of and specifications required by the New York World's Fair Corporation.

"The Southern Biological Supply Co., Inc., agrees to supply G. D. Morrison throughout the entire duration of the Fair with these live baby turtles and other reptiles and amphibians delivered to the Children's World booth at the New York World's Fair, New York City, ready for sale and complete with decals, moss, boxes, and also food and accessories sold in connection therewith, or mailed, postage prepaid, to any part of the U. S. A.

"Sale price of baby turtles at the Fair Grounds to be as follows unless a change is agreed upon by both parties with the approval of Billy Rose and the New York World's Fair Corporation; plain turtle 25¢; turtle with decal 35¢; turtle food 10¢; painting name on turtle 10¢; postage per turtle 5¢. The retail selling price of larger turtles and for other reptiles and amphibians and food and accessories to be sold at the Children's World is to be determined by mutual agreement and to be the same as the selling price at other booths at the Fair.

"The cost of baby turtles f. o. b. booth at the Children's World is to be 12¢ per turtle, until Mr. Morrison recovers his original investment in the above mentioned concession; thereafter the cost is to be 40% of the gross selling price. Any other reptiles and amphibians, food and accessories sold by G. D. Morrison is to be paid for at a price equal to 40% of the gross retail selling price agreed upon. Mr. Morrison's representative is to be responsible for all items delivered to the booth except that turtles and other animals dying during the ordinary course of the business are to be replaced by the Southern Biological Supply Co., Inc., upon proof of death by G. D. Morrison or his representative.

"This constitutes an initial order for 50,000 baby turtles to be secured by Southern Biological Supply Co., Inc., on or before April 30, 1939.
"Signed Perry Viosca, Jr.
"For: Southern Biological
      Supply Co., Inc.
            "Signed G. D. Morrison
            "For:   G. D. Morrison".

■ Viewing the above provisions as a whole, and considering other evidence in the record, we are inclined to the belief that the written contract evidences merely a proposed venture or partnership arrangement

of the parties rather than, as plaintiff alleges and contends, an unequivocal order or purchase by defendant of 50,000 turtles at 12¢ each. If it were a firm and binding purchase order why was plaintiff interested in fixing the selling prices? And why should it receive, after defendant recovered his original investment, a percentage of the gross sales? And why was it stipulated that defendant's representative should be responsible for all items delivered to the booth? And why would plaintiff obligate itself to replace all turtles that died after delivery to defendant? These questions seem to answer themselves.

Indicating strongly that the relationship of the parties was in the nature of a joint venture is the fact that plaintiff in the same month of February, 1939, also contracted in writing to supply turtles to the Exposition Souvenir Corporation for sale in its four booths at the New York Fair, which contract, according to the testimony of plaintiff's president, provided for a partnership arrangement; and the first two paragraphs thereof were identical with those of the instant agreement.

Other acts of plaintiff corporation suggest that it did not construe defendant's proposal as amounting to a binding purchase order. Most significant is a monthly statement which it addressed to defendant at Lookout Mountain Camp for Boys, Valley Head, Alabama, sometime after the latter had ceased operations in New York to

the knowledge of plaintiff. This statement, dated July 26, 1939 read: "Bal. due for turtles and amphibians and accessories sold at World's Fair $65.52." Had plaintiff then considered that defendant was obligated under the contract to pay for 50,000 turtles at 12¢ each no doubt it would have billed him accordingly.

True, the last paragraph of the agreement under consideration recited that "This constitutes an initial order for 50,000 baby turtles to be secured by Southern Biological Supply Company, Inc. on or before April 30, 1939." However, the testimony of both plaintiff's president and the defendant discloses that this recital was placed in the agreement for the sole purpose of aiding plaintiff in obtaining a bank loan of $3,000.

■ If our above stated view of the contract be incorrect, plaintiff still cannot recover the damages claimed herein for the reason that no default on the part of the defendant is shown.

Under the agreement plaintiff was to make delivery to defendant at the New York World's Fair. However, it clearly appears from the record that plaintiff never possessed more than 36,382 turtles, and of this number it shipped to New York only a total of some 14,000. After receipt of these by plaintiff's representative in New York some were delivered to defendant, some to the four concessions operated by the Exposition Souvenir Corporation with which plaintiff had also contracted, and of

the remainder approximately 6,900 died. On June 14, 1939 the representative's employment with plaintiff terminated; and between that date and June 27, 1939 he sold outright the turtles left on hand and credited plaintiff with the proceeds. At no time did the defendant refuse to receive any items offered him, and plaintiff's president testified that "He [defendant] never notified me to this day that he wouldn't take any more turtles."

Contending that defendant was placed in default, plaintiff relies on a letter written to him October 4, 1939 by its then attorney. Therein, the attorney stated:

"The Southern Biological Supply Company, Incorporated has placed in my hands for attention a claim against you for damages arising out of a breach of your contract with Southern Biological Supply Company, Incorporated dated February 28, 1939 under which you agreed to purchase an initial number of 50,000 baby turtles on or before April 30th, 1939, at 12¢ per turtle.

"Southern Biological Supply Company, Incorporated actually shipped to New York on account of your order 14,144 baby turtles, and the number you accepted was only 450 approximately. The remaining turtles were on hand in New Orleans ready for delivery, and because of your failure and refusal to accept delivery Southern Biological Supply Company, Incorporated advises that many of the turtles had died.

"In addition to this loss Southern Biological Supply Company, Incorporated has also sustained substantial additional losses through the purchase of materials, supplies, and accessories which were to be used in filling orders contemplated by this contract.

"However, as a compromise, Southern Biological Supply Company, Incorporated would be willing to accept the sum of $6000.00 representing 50,-000 turtles at 12¢ per turtle. The remaining turtles will be held subject to your order, less, of course, those that died as a result of your refusal to accept delivery at the time contemplated for your contract.

"As you know, Southern Biological Supply Company, Incorporated financed this contract through a loan at the Whitney National Bank, and placed as security for this loan all sums to be realized from this contract. As this loan is still unpaid, it is necessary that this matter be given prompt attention.

"Please let me know by return mail if you desire to settle this matter amicably."

This letter, written long after both litigants had ceased operations in New York, is not an offer by plaintiff to perform, a prerequisite for recovery of damages. It is nothing more than a demand for payment based on an erroneous assumption that there had been a previous offer to deliver and a refusal to accept.

Our conclusion in this cause is that plaintiff should recover from defendant only the sum of $65.52, this being an amount admittedly due by him and for which plaintiff rendered the monthly statement under date of July 26, 1939.

For the reasons assigned the judgment of the district court is amended by reducing the sum awarded plaintiff from $395.55 to $65.52; and, as amended, the judgment is affirmed. The costs of this appeal shall be paid by the litigants in equal proportions.